CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
AUG 12 2010
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

CHARLES W. CAMPBELL, )
)
Plaintiff, )
) Civil Action No. 6:09-CV-00038
v. )
)
MICHAEL J. ASTRUE, ) By: Hon. Michael F. Urbanski
Commissioner of Social Security, ) United States Magistrate Judge
)
Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff Charles W. Campbell ("Campbell") brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying his claim for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act") for the period between September 9, 1995 and December 31, 2000, and for Supplemental Security Income ("SSI") benefits beginning on April 15, 2005. On appeal to this court, Campbell argues that the Commissioner erred by failing to properly consider the plaintiff's limitations detailed in the functional capacity evaluation ("FCE"), specifically by failing to include these limitations within the hypothetical presented to the vocational expert. Campbell, therefore, wants this matter to be remanded for consideration of the limitations contained in the FCE. The Administrative Law Judge ("ALJ") did consider the FCE, but chose to afford it only limited weight. The ALJ found that the FCE performed in 2003 was not probative of the plaintiff's condition during the relevant time periods and the conclusions in the FCE were inconsistent with the weight of the objective medical evidence. After carefully reviewing the record, the undersigned finds that the ALJ's conclusions were both amply supported by substantial evidence. As such, it is **RECOMMENDED** that the Commissioner's decision be affirmed.

1

## I. Standard of Review

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-62 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"),[1] considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th

---

[1] RFC is a measurement of the most a claimant can do despite his limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after he considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain). See 20 C.F.R. §§ 404.1529(a), 416.929(a).

2

Cir. 1975). If the Commissioner decides that the claimant is not disabled, the Claimant may seek review by the district court.

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Social Security Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct, legal standard." Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that [his] ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. Id., 42 U.S.C. § 405(g).

## II. Factual Background

Plaintiff Campbell was born on November 25, 1965. (R. 25). He was 29 years old at the time of the alleged onset of disability, and was therefore deemed a "younger individual" by the ALJ. See 20 C.F.R. 404.1563. (R. 25). Although Campbell never graduated high school or earned a GED, he completed the eleventh grade and is able to read and write the English language. (R. 26). Campbell worked as a laborer for approximately ten years, mainly in construction, until he hurt his back in September of 1995. (R. 501-02). Preliminary evaluation revealed a back strain and pre-existing spondylolisthesis. (R. 186). He was then treated by Dr. Davis von Oesen who concluded that the spondylolisthesis was a pre-existing condition which was likely aggravated by the work injury. (R. 185). Dr. von Oesen recommended a back corset, anti-inflammatories, and a rehabilitation mobilization and strengthening program, but also released him to light duty work. (R. 185). Campbell's company would not allow him to return to work until he could return at full duty, however, and Campbell began to receive worker's compensation benefits. (R. 180). Although Dr. von Oesen found that Campbell was slowly improving his "work-hardening" and rehab, Dr. von Oesen continued to find that Campbell was not capable of returning to full duty. (R. 180). Although Dr. von Oesen did not think surgery would be effective, he referred Campbell to the University of Virginia to investigate surgical possibilities. (R. 179). Orthopaedic surgeon Kevin F. Hanley, M.D., also evaluated Campbell around that time and reached the same conclusion that surgery was unlikely to benefit Campbell and that strengthening exercises and anti-inflammatories were most appropriate. (R. 178).

Eventually, however, Dr. Donald Chan at the University of Virginia evaluated Campbell, and although he concurred with Dr. von Oesen's diagnosis, differed in his suggested treatment. Dr. Chan opined that the spondylolisthesis was "probably pre-existing but aggravated at the time

4

of his work injury." (R. 200). His recommended treatment was "posteriorlateral fusion to stabilize his spine using autologous iliac bone grafting" which could eventually result in Campbell returning to full duty work after six months. (R. 200). Over the next few years, Campbell did not return to work, nor was he able to schedule the surgery because of delays encountered with his health insurer. (R. 366). It also appears that Campbell was ambivalent, if not fully opposed, towards undergoing surgery. (R. 197). During this period of time, however, various doctors continued to opine that Campbell was capable of performing light-duty work. (R. 194). Dr. Chan, himself, believed only that Campbell should "refrain from any kind of heavy duties" while deciding on whether to undergo the operation. (R. 200).

Later, Dr. Kenneth Hopkins began to treat Campbell, and reached basically the same conclusions as Dr. von Oesen and Dr. Chan, except as to the suggestion of surgery. Dr. Hopkins opined that the patient had a lumbar strain superimposed on some pre-existing mechanical defect. (R. 197). Dr. Hopkins thought that, although Campbell could not return to his previous, heavy-duty work, "job search [and] job possibilities could be entertained" and that a rehabilitation counselor was needed to assist Campbell with a conservative treatment for what was a "condition he is going to have to deal with chronically." (R. 195). Hopkins believed that Campbell was not motivated enough to rehab his condition on his own, and that it was the "secondary gain elements, psychological components, de-conditioning, [and] unreasonable expectations [that were] significant factors" in Campbell's failure to improve. (R. 194). Thus, Hopkins believed that if Campbell could "find a suitable job, get strength and endurance built up that he probably should be able to function....he should be able to do something." Id. After several years of this, Campbell reportedly wished to consider the surgery suggested by Dr. Chan again. Dr. Hopkins thought Campbell would be "a terrible surgical candidate" because Dr.

Hopkins had been "discouraged by Campbell's response or lack of response to conservative treatment." (R. 190).

Nevertheless, Campbell's insurance company finally approved the fusion surgery and on November 9, 2000, Campbell met with Dr. Chan and decided to undergo the procedure. (R. 356). Campbell underwent surgery on January 10, 2001. (R. 211-17). Following the surgery, Dr. Chan opined that Campbell was "continuing to do better than he was prior to surgery...ambulating without difficulty...strength improving." (R. 351). As of June 21, 2001 Campbell had "not required any pain medication for two weeks," he was "eager to go back to work," and was able to "bend forward and almost touch his toes." (R. 348). Dr. Chan recommended that he begin physical therapy. Id. Campbell failed to continue with physical therapy after his first session, which he claimed caused him an increase of back pain that would not respond to anti-inflammatories. (R. 347, 343). An MRI ordered following these reports of pain showed only "facet joint arthritis at L4-5 and a synovial cyst" while his "fusion L5-S1 appear[ed] to be solid." (R. 341, 336). Dr. Chan believed that vocational rehabilitation for a sedentary job was appropriate, and after three months of training hoped Campbell could return to a new occupation. (R. 336).

Campbell never met with a vocational rehabilitation expert, and continued to complain of lower back pain. (R. 335). Dr. Chan, however, "found no evidence of any nerve root compression" and believed that "there is nothing surgical" to be done. (R. 335). Campbell, however, did undergo a functional capacity evaluation ("FCE") on April 3, 2003. (R. 482-94). The FCE found, among other limitations, that Campbell could lift from the floor only up to ten pounds rarely, front carry only five pounds occasionally, and ten pounds rarely, and could only sit occasionally up to fifteen to twenty minute intervals. Id. The FCE evaluation, however, also

6

noted that Campbell "has poor awareness and understanding of his current dysfunction...poor body mechanics and spinal alignment pattern." (R. 486). Thus, the FCE found that in the course of just one session Campbell was able to improve his pain from 8/10 to 5/10. Id. The FCE concluded that Campbell has the "potential to improve his functional abilities...through structured work conditioning and a therapeutic exercise regimen." Id. This mirrors recommendations of Drs. Chan, Hopkins and von Oesen. Dr. Chan did view the FCE in connection with his treatment of Campbell and concluded that his prior recommendation that Campbell should undergo "vocational rehabilitation" was still appropriate. (R. 334).

Starting in 2003 Campbell also began to receive treatment, primarily pain medications, from Dr. Kim Wright and Dr. Akhtar Purvez. (R. 260-61; 266-67; 306-12). Although Campbell continued to report pain in his back, there were no other changes to his condition. Dr. Wright observed that the level of pain reported by Campbell was "incredible...[and] patient keeps going on and on about his degree of pain" but also observed that "patient is in no acute distress." (R. 307). In October of 2005 Campbell began treatment with yet another physician, Dr. Francis Shen, who diagnosed Campbell with low back pain. Two different MRI's indicated no serious change from his prior condition, revealing only mild to moderate spinal stenosis, while x-rays showed no instability in the spine. (R. 332, 379, 391). Dr. Shen once again referred Campbell to a pain management clinic, but, given his past and current drug abuse, the clinic did not prescribe him any medications. (R. 380). The clinic recommended that Campbell be referred to pain psychology sessions instead.

The ALJ also considered the opinions of several agency physicians, including Dr. Frank Johnson, Dr. Luc Vinh, and Dr. Robert Chaplin, Jr. In 2000, Dr. Johnson determined that Campbell was capable of lifting twenty pounds occasionally, lifting ten pounds frequently,

standing for six hours and sitting for six hours in an eight hour workday. (R. 204). Additionally, Dr. Johnson opined that Campbell would be limited in pushing and pulling with his legs, that he should not climb ladders, ropes, or scaffolds, and that only occasionally should he stoop, kneel, crouch, crawl. Id. Dr. Vinh, evaluating Campbell's medical records in 2002 concurred in all respects with Dr. Johnson. (R. 248-252). In August of 2005, Dr. Chaplin, Jr., examined Campbell's medical records and basically mirrored the other physicians opinions. Dr. Chaplin, Jr., thought Campbell could frequently lift less than ten pounds, occasionally lift up to ten pounds, stand for two hours and sit for six hours in an eight hour workday, but that he should not climb ladders, ropes, or scaffolds, and that only occasionally should he stoop, kneel, crouch, crawl. (R. 325-30). A consultative examiner, Dr. William Ramsey, examined Campbell in July in 2005, and opined that it would be difficult for Campbell to perform physical labor, but was unable to identify specific limitations as noted above. (R. 322).

### III. Analysis

Plaintiff argues that the ALJ failed to properly consider the FCE because the hypothetical that the ALJ provided to the VE was given before the ALJ received and reviewed the FCE and, therefore, did not incorporate the limitations contained in the FCE. In particular, the FCE indicated that Campbell could only sit for fifteen to twenty minutes at one time.[2] (R. 484). Defendant points out that the FCE cannot establish that Campbell was disabled because it fails to address the relevant time periods. Accordingly, the hypothetical was not deficient simply because it did not include the FCE limitations. Importantly, the evidence shows the ALJ did consider the FCE, but simply chose to afford greater weight to other objective medical evidence.

---

[2] The court notes that the FCE is somewhat contradictory on this point, as it described Mr. Campbell's ability to sit and stand for fifteen to twenty minute intervals as both a significant ability and a significant deficit. (R. 483).

8

A. The 2003 FCE Is Not Probative Of Disability During DIB Period

The first relevant time period in this case ran from September of 1995 to December of 2000. To be entitled to DIB, a claimant must be "under a disability" within the meaning of the Act as of the date his last insured status expired. Campbell's insured status expired in December 2000 and, therefore, he was required to demonstrate that he was disabled in December of 2000 or earlier. See 20 C.F.R. § 404.131 ("To establish a period of disability, you must have disability insured status in the quarter in which you become disabled or in a later quarter in which you are disabled."). Although medical opinions from after the date last insured may sometimes be probative to a DIB determination, these medical opinions must relate back to the relevant period and offer a retrospective opinion on the past extent of an impairment. Woolridge v. Bowen, 816 F.2d 157, 160 (4th Cir. 1987). On the other hand, ALJs may also discount these opinions when they are dated long after the date last insured and are inconsistent with other opinions from the relevant period. See Johnson v. Barnhart, 434 F.3d 650, 656 (4th Cir. 2005). Cf. Wilkins v. Sec'y, Dept. of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991) (finding that an uncontradicted opinion from a treating physician on the past extent of impairment should be credited).

In the instant case, however, the FCE was not prepared by a treating physician – nor even a physician at all. See R. 482 ("Test Performed by: Darcy J. Higgins, M.S., P.T.").[3] Nor was the FCE particularly close in time to the date last insured – almost two and a half years afterwards, in fact. Id. And nowhere does the FCE suggest it was intended as a retrospective

---

[3] The physical therapist was not a treating physician, and thus would not be entitled to greater weight than other medical evidence. See Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006) (explaining that courts typically "accord greater weight to the testimony of a treating physician because the treating physician has necessarily examined the applicant and has a *treatment relationship* with the applicant.") (emphasis added). There was no such relationship here, and the FCE might very well be deserving of less weight compared to Dr. Chan and others.

9

evaluation of Campbell's condition in December of 2000; rather it was to serve as "a basis for return to work planning." Id. Most importantly, the opinion is inconsistent with substantial medical evidence from the relevant period. Dr. von Oesen and Dr. Hopkins never found Campbell to be so incapacitated he could only sit for fifteen to twenty minutes at a time. Instead, Dr. von Oesen thought that Campbell could perform light duty work at any time starting October 18, 1995. (R. 182-85). In 1996, Dr. Hanley suggested that Campbell may want to avoid "prolonged sitting" but that a "return to work activities at this time is clearly indicated" and he would be able to lift up to 35 pounds. (R. 178). Dr. Hopkins concurred in 1997, noting that there was "no medical explanation for [Campbell] not being able to do light duty work." (R. 192). In 2000, Dr. Johnson found that Campbell would sit for about six hours a day and stand for six hours a day with normal breaks during a normal workday. (R. 204). All of these opinions are inconsistent with the key finding of the FCE that Campbell was limited to sitting or standing for periods of only fifteen to twenty minutes. Accordingly, the ALJ's decision to provide a hypothetical to the VE without the considering FCE results to the VE did not render the hypothetical inadequate. Similarly, the ALJ's overall determination as to Campbell's status, for which the ALJ did consider the FCE, is supported by substantial evidence.

B. The 2003 FCE Is Not Probative Of Disability for SSI Period

The second relevant period began with the date that Campbell filed his application for SSI benefits, April 15, 2005. To be eligible for SSI benefits, you must be disabled *and* file an application. "When you file an application in the month that you meet all the other requirements for eligibility, the earliest month for which we can pay you benefits is the month following the month you filed the application...we cannot pay you for...any months before that month." 20 C.F.R. § 416.335. Thus, Campbell is asking the court to find that the ALJ should have

considered the FCE performed on April 3, 2003, to be indicative of Campbell's future level of disability at the time Campbell filed his application for SSI benefits, a full two years later.

The court rejects such a conclusion. First, the FCE that plaintiff relies on very clearly indicates that progress and improvement were possible. The FCE was described as the "basis for return to work planning." (R. 486). Campbell was said to be "most limited by decreased strength/endurance for Lumbo-Pelvic stabilizing musculature," a condition which could be remedied through increased therapy and conditioning. Id. The physical therapist performing the FCE found that "with basic intervention today...[Campbell] was able to decrease his complaint of pain from a 8/10 level to a 5/10 level." Id. Finally, the physical therapist opined directly that "Campbell has potential to improve his functional abilities." Id. Plaintiff has not advanced any argument to distinguish why the FCE's conclusion that Campbell could, and did, improve his condition *should not* be credited, while the FCE's more fleeting statements as to his instant limitations *should* be credited. The omission of such an argument is particularly striking when the FCE's conclusion that Campbell could improve with strength training and physical therapy is supported by, and consistent with, Dr. Chan's conclusion that vocational rehabilitation for a sedentary job was appropriate, and Dr. Chan's hope that after three months of training Campbell could return to a new occupation. (R. 336).

Second, the objective medical evidence post-FCE is not consistent with the FCE's characterization of Campbell's limitations. X-rays of Campbell's back taken in October 2005 showed "no instability." (R. 391). A lumbar MRI dated November 9, 2005 showed no significant canal stenosis, and was "essentially negative." (R. 379). At a visit to the UVA Pain Management Clinic, Dr. Shen reported that Campbell was "able to get off and on examination table without assistance." On November 17, 2005 he had a "painless range of motion in his hips

and knees" and did not request any pain medications from the attending physician.[4] (R. 332). On January 12, 2006 he left the clinic without waiting to be seen, which can easily be considered evidence that his pain was not disabling. (R. 331). Consequently, the court finds no reason that the 2003 FCE should be considered particularly useful in the analysis of whether Campbell was disabled at some point in or after August of 2005. Accordingly, the consideration that the ALJ provided to FCE was entirely appropriate, and the ALJ's conclusion was supported by substantial evidence.

## IV. Conclusion

At the end of the day, it is not the province of the court to make a disability determination. It is the court's role to determine whether the Commissioner's decision is supported by substantial evidence. It appears that the ALJ properly considered all of the objective and subjective evidence, including the 2003 FCE, in adjudicating Campbell's claim for benefits and in determining if his impairments prevented him from performing any work. All facets of the Commissioner's decision in this case were supported by substantial evidence. Accordingly, the undersigned **RECOMMENDS** that the Commissioner's decision be affirmed, plaintiff's motion for summary judgment (Dkt. No. 10) be **DENIED**, and the defendant's motion for summary judgment (Dkt. No. 11) be **GRANTED**.

The Clerk is directed to transmit the record in this case to Norman K. Moon, Senior United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not

---

[4] This directly contradicts the report of Dr. Ramsey who found Campbell to be nearly hobbled by pain in his "sacroiliac joint, right hip, and right leg" a mere 4 months prior to this report. (R. 320).

12

specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

Entered: August 12, 2010.

/s/ Michael F. Urbanski

Michael F. Urbanski
United States Magistrate Judge